Willard and Betty RANDOL,
et al., Appellants,

v.

Susan E. (Jochens) ATKINSON,
et al., Respondents.

Nos. WD 53815, WD 53876.

Missouri Court of Appeals,
Western District.

Feb. 24, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court March 31, 1998.

Application for Transfer Denied
May 26, 1998.

Thomas E. Thompson, Byron A. Bowles, Jr., Kansas City, for Appellants.

Gregory P. Forney, Kansas City, for Respondent (Jochens) Atkinson.

James W. Tippin, Keith Cutler, Kansas City, for Respondents Woodmoor and Wind River.

Before ELLIS, P.J., and HOWARD and RIEDERER, JJ.

HOWARD, Judge.

This is an appeal from the trial court's grant of the Woodmoor Condominium Association's and Wind River Development Corporation's motions for summary judgment. Appellants claim the trial court erred in granting summary judgment for the Association and Wind River because the Association and Wind River 1) owed a duty of care to the condominium owners under the applicable statutes and under the Declaration of Condominium and bylaws for the Woodmoor Condominiums; 2) owed a duty of care to the owners of the Woodmoor Condominiums under a common law analysis of duty based upon foreseeability, fairness, and public policy; 3) owed a duty of ordinary care to the owners of the Woodmoor Condominiums because condominium associations are analogous to landlords who have a duty of ordinary care to their tenants; 4) owed a duty of care to the owners of the Woodmoor Condominiums because the Association and Wind River undertook the management of the Woodmoor Condominiums for the benefit of the condominium owners; 5) owed a duty of care to the owners of the Woodmoor Condominiums because the Association and Wind River had a special relationship with the condominium owners, who relied on the Association and Wind River to provide a place of safety. The Association and Wind River argue that Appellants waived their right to sue them in the Declaration of Condominium and the bylaws of the Woodmoor Condominiums.

## Facts

The Woodmoor Condominiums were created on or about October 3, 1990, when the Declaration of Condominium ("Declaration") was filed by Wind River Development Corporation ("Wind River"), the developer of the Woodmoor Condominiums. The Woodmoor Condominium Association ("Association") was created by the Declaration to function as the condominium association for the Woodmoor Condominiums. The Association, through its executive board or a managing agent, is responsible for administering and managing the Woodmoor Condominiums. Under the Declaration, the executive board is controlled by Wind River during the declarant control period, and thereafter members of the board are to be elected by unit owners. Management of the Woodmoor Condominiums was controlled by the Declaration and the bylaws of the Association.

The condominium units of the Woodmoor Condominiums have wooden decks. Under the Declaration, these decks are limited common elements. The executive board is granted express authority to promulgate rules and regulations regarding the use of the decks. The board has the authority to "enjoin, abate, or remedy by appropriate legal proceedings" any violations of the rules and regulations by a unit owner. As set out in the Declaration, use of these decks is "limited to lawful use normally associated with balconies serving residential apartments."

Appellants were individual unit owners of condominium units in the same ten-unit building at Woodmoor Condominiums. Susan Jochens (now Atkinson) also owned a

condominium unit in the building. Prior to April 12, 1993, Jochens purchased a charcoal grill, which she used on the deck of her condominium unit. The deck was open, so the charcoal grill was in plain view and could be seen from the ground on the outside of the building. On April 11, 1993, Jochens and her boyfriend used their charcoal grill. After using the grill, the couple did not go onto the deck for the remainder of the evening. In the early morning of April 12, 1993, fire swept through the ten-unit condominium building in which Appellants and Jochens lived, completely destroying it. At 2:00 a.m. on April 12, 1993, Susan Jochens saw the fire on her deck coming from where her grill was stored.

Before the fire stopped burning, Detective Leroy Kuhns of the Independence Police Department arrived to investigate the cause and origin of the fire. Detective Kuhns is a trained and certified fire investigator for the State of Missouri. Based on his investigation and training, Detective Kuhns concluded that the fire originated from the charcoal grill located on the deck of Jochens' condominium unit. Detective Kuhns testified that the use of charcoal grills on wooden decks is dangerous.

Robert Wallace is the former fire marshal for the City of Kansas City, Missouri. Wallace stated in his affidavit that the use of charcoal grills on wooden decks is dangerous and a known fire hazard. In Wallace's professional opinion, the Association should have made a rule or regulation prohibiting the use of charcoal grills on the wooden decks of the condominium units.

At the time of the fire, the members of the executive board of the Association were appointed by the unit owners. Aaron Stratman and Ronald J. Adams were members of the executive board before the fire. Stratman testified that the duties of the executive board at the time of the fire "were very limited since Wind River was the managing agent as well as the builder of the condominiums." Adams, a member of the executive board in 1991, testified, "I think it was pretty much given, we were given to understand, that, really, the operation had not been turned over to an elected board yet." Robert Crick became a member of the executive board two months after the fire. Crick testified that at that time the executive board was operating through Wind River, which was acting as the managing agent and performing most of the functions of the management of the Association.

At the time of the fire, there were no Independence city ordinances or any other applicable laws that prohibited the use of charcoal grills on wooden balconies. At the time of the fire, neither Wind River nor the Association had promulgated a rule prohibiting the use of charcoal grills on the wooden decks of the condominium units. Following the condominium fire, a rule was enacted prohibiting the use of charcoal grills on the decks of the Woodmoor Condominium units.

On November 4, 1993, Willard and Betty Randol, Hugh and Beverly Tucker, and William and Dorothy Norton filed petitions for damages against Susan Jochens and the Association for negligence, seeking damages for the personal property each lost in the condominium fire. Jochens' motion to consolidate the actions was granted. Shirley Dauzvardis was granted leave to intervene as a party plaintiff in the action, also seeking damages for the personal property she lost in the fire. In addition to Jochens and the Association, Dauzvardis also named Wind River as a defendant. The other plaintiffs then amended their petitions to add Wind River as a defendant. All three defendants moved for summary judgment. The circuit court filed an order granting partial summary judgment on November 5, 1996. The court denied summary judgment for Jochens, but granted summary judgment for the Association and Wind River. The court indicated that the Association and Wind River did not owe a legal duty to the plaintiffs as alleged in the plaintiffs' petition. The court certified the cause for immediate appeal pursuant to Missouri Supreme Court Rule 74.01(b). This appeal followed.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial*

*Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993); Rule 74.04(c). Because the trial court's judgment is founded on the record submitted and the law, the Court of Appeals need not defer to the trial court's order granting summary judgment. *ITT*, 854 S.W.2d at 376. Appellate review is essentially de novo, and the criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially. *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996).

## Discussion

We first address whether Appellants may bring suit in this case. Respondents allege that pursuant to Article XII, Section C of the Declaration of Condominium, and Article VII, Sections A and E of the bylaws, Appellants waived their right to bring suit. We are unpersuaded that these sections prevent Appellants from bringing suit in this case.

## I. Bylaws, Declaration of Condominium, and Statutes

Appellants allege five theories for their argument that the Association and Wind River owed a duty of care to the condominium owners. Appellants first contend that the Association and Wind River owed a duty of care to the condominium owners under the Declaration of Condominium and bylaws for the Woodmoor Condominiums, as well as under Missouri statutory law.

We first address whether the bylaws or the Declaration created a duty on the part of the Association and Wind River to ban the use of charcoal grills by the unit owners. Condominium bylaws constitute the rules and regulations that govern the internal administration of the condominium complex. *Wescott v. Burtonwood Manor Condominium Ass'n Bd. of Managers*, 743 S.W.2d 555, 558 (Mo.App. E.D.1987). The bylaws must be strictly construed. *Id.* To support their argument, Appellants rely on a provision in the bylaws granting the Association and Wind River the power "to adopt, repeal or amend Rules and Regulations for the

Woodmoor Condominiums." Appellants also rely on the section in the Declaration that regulates the use of limited common elements. We find nothing in the bylaws or the Declaration that, by itself, imposed a duty on the Association and Wind River to ban the use of charcoal grills.

We next address whether the Association and Wind River had a statutory duty to ban charcoal grills. Because the Woodmoor Condominiums were created after September 28, 1983, the Uniform Condominium Act, §§ 448.005 to 448.210 RSMo 1994, applies. Appellants argue that § 448.3–103.1 of the Uniform Condominium Act imposed a duty on the Association and Wind River to prohibit charcoal grills. Section 448.3–103.1 provides, in pertinent part, that "[i]n the performance of their duties, the officers and members of the executive board are required to exercise (1) if appointed by the declarant, the care required of fiduciaries of the unit owners, and (2) if elected by the unit owners, ordinary and reasonable care." Although the facts are unclear, we will assume for the purpose of analysis that both Wind River and the Association were in control of the Woodmoor Condominiums at the time of the fire. That being the case, this section clearly imposes a fiduciary duty on Wind River and a duty of ordinary and reasonable care on the Association. However, we find that the Respondents' duties did not require them to ban the use of charcoal grills. Appellants presented no convincing evidence that the use of charcoal grills was such a dangerous practice that the failure of Respondents to ban the grills amounted to negligence.

## II. Common Law Duty

Next Appellants contend that the Association and Wind River owed a duty of care to the owners of the Woodmoor Condominiums under a common law analysis of duty based on foreseeability, fairness, and public policy. However, the duties owed by the Association and Wind River to the unit owners are limited to those duties included in the bylaws and the provisions of Chapter 448 RSMo. *Wescott*, 743 S.W.2d at 558. There-

fore, an analysis of common law duty is not appropriate in this case.

### III. Landlord Analogy

■ Third, Appellants contend that the Association and Wind River owed a duty of ordinary care to the owners of the Woodmoor Condominiums because condominium associations are analogous to landlords, who have a duty of ordinary care to their tenants. No Missouri court has found that condominium associations are analogous to landlords for the purpose of determining whether a duty is owed. We decline to make that analogy in this case.

### IV. Management for Benefit of Owners

■ Fourth, Appellants contend that the Association and Wind River owed a duty of care to the owners of the Woodmoor Condominiums because the Association and Wind River undertook the management of the Woodmoor Condominiums for the benefit of the condominium owners. However, where the existence of a duty is established, it is not one to protect against every possible injury which might occur. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). Rather, it is generally measured by whether or not a reasonably prudent person would have anticipated the danger and provided against it. *Id.* In this case, it was not the duty of the Association or Wind River to protect the owners from all potential sources of harm, particularly those caused by the negligence of third parties.

■ It is not negligence to fail to anticipate that another will be negligent, because one is entitled to assume and act upon the assumption that others will exercise due care for their own safety, in the absence of notice to the contrary. *Buck v. Union Elec. Co.*, 887 S.W.2d 430, 434–35 (Mo.App. E.D.1994). The Appellants have not alleged that either the Association or Wind River had notice that any of the unit owners were being negligent in the use of their grills. Therefore, Respondents cannot be found negligent in their failure to anticipate Susan Jochens' negligence.

### V. Special Relationship

■ Fifth, Appellants contend that the Association and Wind River owed a duty of care to the owners of the Woodmoor Condominiums because the Association and Wind River had a special relationship with the condominium owners, who relied on the Association and Wind River to provide a place of safety. However, the condominium association-unit owner relationship is not recognized in Missouri as a special relationship which, by itself, gives rise to a duty.

The judgment of the trial court is affirmed.

All concur.